The panel has before it a total of six cases. Three of them are being submitted today on the briefs without oral argument. Those appeals are in number 04-1616, In Re. Con. Appeal number 05-3227, Munson v. Department of Commerce. And Appeal number 05-3336, Harrelson v. Merit System Protection Board. In the three cases for argument, we'll hear argument first in Appeal number 05-1173, Sun Coast v. CCL Products. Mr. Meyer, good morning. Welcome. Please proceed. May it please the Court. This is a case that should have gone to a jury. The trial court erroneously granted summary judgment of non-infringement on two unsustainable grounds by misapplying Rule 56 and rendering surprise, erroneous claim construction. I'd like to talk about the Rule 56 errors first. The trial court misapplied Rule 56 by failing to appreciate that the law requires the trial court to consider all of the Record F evidence submitted on the summary judgment motion, and in a light most favorable to the non-movement, regardless of which party submits the evidence. Here, the court erred by essentially minting a new summary judgment requirement, contrary to law, that only the non-movement's F evidence is considered on summary judgment. Where did the trial judge say that? That's the effect of his decision. He said that by, I'm not considering in light of a technical objection that was raised to CCL's lawyer's declaration. He refused to consider any of the evidence, you can tell by his rulings. Wait a minute. He seemed to exclude some photographs with markings, right? He excluded some photographs, and he also excluded computer-generated drawings which were color-coded to show exactly what were the claim limitations and the issue. But as I understand it, he had the devices so depicted presented to him, and they were part of the record. That's exactly my point. So then when he rejected the depictions in the computer-model drawings in the photographs, why shouldn't we construe that as he was rejecting the annotations, which are just lawyer arguments? They aren't actual evidence.  Well, stay with me. Why isn't what he rejected simply lawyer argument on paper and therefore by definition not evidence? We say in essence that it was lawyer argument, and he derided the whole opposition as conclusion because he wouldn't see it. But lawyer argument isn't evidence. Your contention is that he didn't look at all the evidence. I'm suggesting to you that what he didn't look at is actually not evidence at all. Well, it was intended to be evidence, Your Honor. But you can't make it evidence by your subjective intent. The photograph could be evidence. The attorney's argumentative markings and annotations about a photograph cannot be evidence. It's by definition. Well, I would agree, Your Honor, but he then got it wrong in that he adopted all of Suncoast's characterizations of the products, which were improper. They were wrong, and he didn't draw inferences in favor of the non-movement the way he should have. If you look at the legally correct claim constructions and the accused products in evidence, which I understand were delivered to the court yesterday, it's clear that he was wrong. So we can completely ignore that. My point is that he considered that evidence in relation to Suncoast's substantive merits, the second part of the summary judgment order. But on the first part, on this improper procedural ground, he holds that against CCL and doesn't consider it at all. He's essentially saying there's a complete lack of proof on his first ground. Excuse me, but the product samples that were in evidence, were those product samples disassembled or were they complete assembled products? The original understanding is that we never—CCL never got an opportunity to see them until way after the proceedings because the trial court took the unusual step of calling up opposing counsel and saying, I disassembled them and analyzed them and within days issues his first minute order improperly granting summary judgment on both the procedural ground and also erroneous because he got the claim construction wrong. And even under his erroneous claim construction, there were numerous fact issues that were raised with respect to at least three fact issues that he resolved against CCL. Did you answer the question about whether the products were assembled or disassembled? The court itself disassembled it and it says it exactly in its order. I can get you that at sight. So submitted assembled but disassembled by the judge himself? The judge himself had the very best evidence in front of it and took it apart. It's not that complicated of a technology here. Indeed, Sunco said they took the patent and within one day they could determine that they didn't infringe it. They're looking at the product and they went off and they filed a DJ action which started this whole lawsuit. The judge just didn't get it right. He would have understood our positions better had he looked at the evidence that we tried to submit, the annotations that he objected to. Well, let me just – I mean, you're throwing a lot at us as you did in the briefs. I mean, you're arguing that everything that happened from day one to the final day is incorrect. So let's assume hypothetically that we reject your argument that there was procedural error in terms of the way the judge handled the evidence. And you also argue in your brief you challenged the initial claim construction. So let's assume hypothetically that we agree with the initial claim construction. Do you have anything left in your case? It's wrong. I mean – What's wrong? The claim construction that was applied, the decision that there was infringement? What's wrong? The claim construction is wrong and the decision granting – The claim construction of the initial judge or the application of that claim construction to the devices and the infringement? The claim construction of the initial judge is wrong, but it's not necessary for us to win on that on appeal. Okay? That's not the important point. The new surprise claim constructions that the judge rendered in his summary judgment order are wrong legally. And you infer there were new claim constructions from what? From the judge's analysis of infringement? Yes, from his infringement analysis. It's very clear that there are new claim constructions being rendered there. He says the damping means is not arranged primarily in the drum. The claim doesn't say that, and that was not one of the terms at issue at Markman. There were nine terms construed on initial Markman hearing, and all nine of them were resolved in CCL's favor. Where is the procedural error? I don't quite understand. I don't know of any case that holds, for example, that a judge may not put a claim construction of a previously unconstrued term in a summary judgment decision. We can, but then he has to give us an opportunity to address that. He never even let us submit doctrine of equivalence evidence. Wait a minute. If your point is we had no idea he was considering construing a particular term, and he did, and the first we saw it was in his summary judgment order, then why isn't your protection on a motion to reconsider by pointing out that you hadn't previously had the opportunity to present contention about the construction, didn't even know it was going to occur, now that you see it, you think it's wrong, and here's why. Your Honor, that's exactly what happened. He gave us, after this minute order, he gave us an opportunity, and CCL did submit evidence showing how the claim constructions were wrong, and also properly authenticating the technical objection that he raised in the affidavit. Well, why doesn't that cure the problem? You seem to be saying you were caught by surprise in the summary judgment order because it construed a term that you didn't know he was going to construe. Then you say, but he gave us a chance to contend against that, and we did. Well, why doesn't that opportunity cure any error in his failure to pre-warn you he was going to construe a term that you hadn't put on the list to be construed? Well, one, he got it wrong, but two— That's a different matter. You're arguing that it was inherently unfair, that it was a surprise attack that you had no chance to speak on, but you did have a chance to speak on it even though it was after the order. I don't understand why that isn't sufficient from the standpoint of adequate notice, adequate opportunity to be heard on the point. Because of his improper procedural ruling, he did not credit any of the evidence that we submitted. If you just look at the record, there's plenty of evidence in the record that raises a genuine issue of material fact under his erroneous claim constructions. That's on the merits. I'm trying to stick on understanding your point about how his procedure was all wrong, reversible per se, because we didn't ask him to construe a term, and he did it anyway. Because he refused to credit the doctrine of equivalence evidence that we submitted in response. He either ignored it or he didn't appreciate that our doctrine of equivalence evidence submitted at his invitation in response to these new claim constructions raised genuine issues of material fact. Am I talking about the markings on the photograph? No, I'm talking about he construed— No, when you say the doctrine of equivalent evidence we submitted he ignored or misunderstood, what is the evidence on the doctrine of equivalence that you submitted? We submitted numerous declarations from the inventor Chan in response to his orders that raised specifically that the flanges and the trunnions, the way he's construing them, were equivalent to what's in the accused products. With respect to the dampenings, with respect to all four limitations that he erroneously construed, we showed how under the doctrine of equivalence that even under those constructions there were genuine issues of material fact. I mean the problem here is that the improper procedural ruling that started from day one shackled us through the entire case. And while he's inviting us to submit all this evidence and all these responses, he never—he's either not crediting it or he's not appreciating the fact that they're raising, at a minimum, the claim constructions are wrong. And secondly, that they're raising genuine issues of material fact. I see that I'm into the rebuttal time. Would you like to— I thought that his essential response to the Chan declaration was that it was too conclusory. No, no. His initial—that was the original Galgiano declaration that was submitted, and because of the authenticity objection that was raised, he said that's too conclusory. But when you looked at the opposition brief that was submitted in combination with that declaration, it was very clear that CCL laid out exactly what limitation was met by each structure in the accused product. It might not have been the best format that—in the typical claim chart that you might see, but there's no— What did the trial judge say about the Chan affidavit? He said nothing about the Chan. He said it's too late. It's too late. You can't keep on getting two bites at the apple. We never had one bite at the apple, really, because of this improper procedural ruling where he essentially is discrediting, not even reading anything that we're submitting, whether it's lawyer argument or not, because he had to call up opposing counsel to get the accused products and put them in the record himself. But before reconsideration, at the get-go, I mean the judge says in his initial decision that you put on—your argument for DOE was that you recited the legal standard and then simply concluded that there's no literal infringement. We're not arguing that the initial DOE analysis—we don't need that initial DOE analysis. The only doctrine of equivalence analysis we need is once you change the claim constructions, then you should have been permitted, as we did, to submit doctrine of equivalence evidence in the— Well, all of that is predicated then on our agreeing with you that there was a change in claim construction between the initial claim construction and his summary judgment. Correct. Do you want to save the rest of your rebuttal time? I would, Your Honor. Thank you, Mr. Meyer. Thank you. Mr. Soni? Good morning, Your Honor. Good morning. Am I pronouncing your name correctly? You are, Your Honor. Very well. Please proceed. In preparing last night, Your Honor, I had to recall my first appearance before this court 15-some years ago. I had the good fortune of appearing before Judge Markey, who 30 minutes—30 seconds, rather, into oral argument asked my opposing counsel the key question that I guess we all struggle with each time. Are we dealing with a question of law or a question of fact? And I'm afraid that the presentation that CCL has made really confuses what is before the court. At the end of the day, at the bottom, what CCL does not like is the claim construction that was made by the court. Which claim construction now are you referring to? There was an—I mean, they claim there were two different claim constructions. Are you conceding that there were different claim constructions? Are we talking about the initial claim construction? The initial claim construction identified trunnions as projection-like extensions from the flange. There was no change to that. That remains the manner in which this judge ultimately found a trunnion to be. It is a projection extending from the inward surface, inward face of the flange. Nothing had changed. They keep arguing that there was a restriction added to it, a limitation added to it, that it could not have a recess. That's not what the judge said. In response to their contention that the trunnion could be a female trunnion extending inside of the flange, the judge said it can't because it has to be on the face and it has to extend outwardly from there. Consequently, it can't be a recess inside that flange. That's not different. That is exactly the same argument that was made before Judge King at the time of the original claim construction that was rejected by Judge King, that was made again by CCL in front of this court before Judge Carney during the summary judgment motions and was rejected then. The problem I'm having, just to get to it, Mr. Sanji, is if you look at the judge's conclusions with respect to infringement, you've really got three paragraphs, a paragraph for each of the accused devices. And the judge sees, arguably, not to just stick to projections on the outer surface of the flange. I mean, there's a reference with the initial, the original device is because there are distinct, in other words, the devices do not have flanges that are distinct components. And then the second one, he also seems to concede that there are protruding extensions at each end, which seems to me to arguably be consistent with the initial judge's claim construction, but he finds no infringement. So could you address sort of why I'm not reading this correctly, why he didn't also insert additional things like distinct components and so forth? Sure. Here's the problem. Judge Carney was presented with CCL's drawings, these drawings with the annotations. He rejected them as evidence. They're not evidence. And they were mislabeled. They labeled a flange alternatively as a flange and as a trunnion. That's not answering the question, counsel. The question is whether there wasn't an elaboration or a clarification or whatever you want to call it that altered the previous claim construction, effectively requiring two distinct structures, a flange and then separately a trunnion. I was getting to that, and I believe my answer was directed at that as well, Your Honor. The additional discussion about whether a trunnion and flange need to be distinctly identifiable was a result of the drawings that were mislabeled and the photographs that were mislabeled presented by CCL. They did not arise and were not identified as an issue during the original claim construction because in the original claim construction, there was no suggestion that the one was interchangeable with the other. That arose for the first time during summary judgment when CCL labeled its drawings in a manner that suggested a trunnion and a flange could be the same thing. In fact, the specification clearly says that it is a flange including a trunnion, that the trunnion is projecting outwardly from the inward face of the flange. Consequently, the specification makes clear that there are distinctly identifiable differences between a trunnion and a flange. All the judge was doing in explaining his ruling was pointing out that the accused devices don't have trunnions projecting out of the flange. I'm confused. You seem to be saying identifiable, separately identifiable. I thought the essence of what the judge construed was to require two separate and distinct structures. It's one thing to say two things can be separately identified. It's something else to say they have to be two pieces, one piece doesn't work. I don't think he ever said that one piece doesn't work. If you look at his decision, what he says is one is not the other, they are different, and you cannot say the two are the same. I thought the argument was whether they could be integrally formed by a single process and a single substance, such as a plastic-like material. That was never an issue. We don't disagree that they can be integrally formed, but they must still be distinctly identifiable within that structure. We don't say that you have to have two separate structures that are connected in some fashion. You can form them in plastic, but you must be able to say this is a flange, this is a trunnion. You can't say this is a flange, and oh, by the way, it's also a trunnion. It isn't. There are documents that appear on page 45 of the appellant's brief, I mean picture, which purport to be, I think, the original device and then also the modified device. And is there any dispute that these are accurate depictions of what the judge was relying on? Because that's what they purport to be, and frankly, I'm having trouble understanding why you think the judge had to say they have to be distinct components because the other side was collapsing them, because it seems to me they've labeled here a trunnion and a flange. Well, here's the difficulty. This is a sectional representation from a series of other drawings that were presented to the judge. I am not the master of this document. I cannot vouch for whether this is the same one that the judge was referring to. Well, does the original device have a trunnion on a flange? It has one trunnion, and then it has a recess on the other flange. It does not have a trunnion on the other flange. So it has a trunnion on one flange, but not on the other flange. Correct. And your position is that the claim requires that there be a trunnion on both flanges. The claims unequivocally state there have to be two trunnions. And is that in the original claim construction? I believe so. Why is the structure on page 44, the lower right-hand side, the structure identified as T2, why is that not a trunnion? This is a very poor picture, but I don't see a trunnion there. I see the flange extending up from the housing. There does not appear to be a trunnion extending from it. So your position is that the structure that is identified as T2 is not really a trunnion, it's all part of the same flange. It is the flange. Well, it seems to me that that creates at least a genuine issue of fact. Well, the court had before it the physical devices, and you have it before you at this point. And he examined the physicals, and the answer to your question is they were provided whole, not disassembled. The court disassembled them. He explained during oral argument at the hearing that he took out his little screwdriver and he took them apart. And he examined them, and he concluded that what was there was the flange and not a trunnion. On the face of the flange. He could not find a trunnion extending inwardly from that face of that flange. But you say he found one, but not two, and that would be deficient. Correct. He found one on one side, and he identified it, and on the other side he says there isn't one. Okay, well actually if I read his one paragraph ruling on the infringement of the original device, he includes that reference in the last sentence, which says also. And in that regard he says that the devices only appear to have a single flange with an inwardly facing strip joint. What does that mean if they appear? I mean either they do or they don't. What are we supposed to make of the also they appear to have? Well, that's his expression of what he saw. So in reading this paragraph, doesn't it suggest that that was an aside or not the central focus of his decision on infringement? I mean if that's what it comes down to, only having one versus two, I'm not sure how that comports with the remainder of that paragraph, which appears to be the essence of his analysis, which really doesn't talk about one versus two. It suggests that there's a problem because of no distinct components, etc. I think his language with respect to the lack of a distinct component for a trunnion versus the flange was elaborative rather than core to his decision. What he said is there is no infringement because the calculator does not have projections in the inner surface of both sides of this housing about which the lid rotates. That's the conclusion that he starts with. He then explains that conclusion by saying that, in other words, the flanges with hinge-forming trunnions does not have flanges with hinge-forming trunnions that are distinct components. So he finds that there is a flange, but there is no trunnion here. That's what he says, and that's his conclusion. He had the physicals before him. It is not inconsistent with the claim construction that was originally done by Judge King. There was no narrowing. It was an elaborative explanation of why he felt that there were no projections on the interface of both sides of the housing. What do you mean by projection? Trunnion. Is that the same as saying that a trunnion has to be shaped in what was called a male fashion as opposed to a female fashion with a recess? The specification of this patent does explain that and uses trunnion only in that form. Only as projections? Only as projections. Without recesses, or does it allow for recesses? It does not refer to recesses. It does not explain the application of a recessed trunnion. It does not give any examples of recessed trunnions. All it talks about are projection-like trunnions. Claim 1 does not include the word projection-like trunnion. It uses trunnion, but we interpret the claim by virtue of what is described in the specification. There is no description of a trunnion other than a projection-like trunnion in the specification. But if it's a projection-like trunnion, what leads us to conclude that we have to exclude projection-like trunnions with recesses? We don't. We don't exclude that? We don't have to. Okay, so projection-like trunnions, even if they have recesses, are included. If we have a projection-like trunnion, which therein has a recess, that's okay. But you cannot have a recess in the flange and call that a trunnion. That suddenly eliminates the trunnion component and simply inserts the recess inside the flange. That is what the defendants of CCL pointed to in their drawings and in their photographs and claimed to be trunnions, marked them as T1 and T2. This is the problem that the court had and that we had with these drawings. They were misleading. They were inaccurate. They were inconsistent with the claim construction that had been made by the court, and they were simply wrong. Now, that was the principal reason. We only need one element to be missing in order for us to win summary judgment. Well, can I move on to just another issue with respect to the damping means, the other thing the judge did? Is it your view that the claim construction of the damping means within, that the judge was saying that the damping means have to be entirely within the board, or it has to be predominantly within the board? Because what he says is you don't infringe, as I understand it, because you're only partially. Does that mean that predominantly would be included, or is his claim construction that it has to be entirely within the board? The language used in the claim is arranged within, and that language refers not to the damping drum. It refers to the damping means. The damping means was construed as meaning the damping drum plus the grease. Right. Okay. Consequently, in order for the damping means to exist outside of the board, both the drum and the damping grease have to exist outside as well. In this particular case, in this device only works by the engagement of the damping drum, grease, and the cylinder board. That's what creates the torsional resistance. That only occurs inside that blind board. It cannot occur outside the blind board. There is no portion of the damping drum. So it's entirely. It's entirely. It cannot occur entirely. Right. The mere fact that a portion of the drum may extend beyond the blind board is irrelevant to whether the means, the damping means, is within the board, is entirely within the board. You can have a structure extending beyond. Thank you. Time has expired. Mr. Meyer, two and a half minutes for rebuttal. We're on the appeal only. The cross appeal is on the briefs, but not argued. So your rebuttal is limited to your appeal. Thank you, Your Honor. First of all, we have to talk about flanges and trunnions. It's very clear if you look at 859, figure nine of the patent, what we're talking about with flanges and trunnions. Flanges are elements. It's all part of the housing. It's all the same thing. Flanges stick up from the main body of the housing. Trunnions are pins or pivots that are located on the flanges to provide a rotation point or hinge so you can hinge the lid. On this side, you have the male trunnion, number 30. The flange is 26, and there is structure 30 that fits inside the bore 42 of the lid. On the right side is the female trunnion, which counsel admits is disclosed in the patent, which is projecting structure. Okay. That's 28. The patent specifically says it has a recess 32 inside the lid and that this end of the damping drum is secured inside there to prevent rotation of the damping drum relative to the housing. So the lid, the damping drum is fixed relative to the housing. The lid can rotate relative to the housing. His statement that this, on page 44, that this is a recess in the flange is not what we're saying, and it's not true. It's the same thing as the preferred embodiment in the patent. But the preferred embodiment has two. I mean he also said that he felt of them. He has two also. He has two. And then that's the— Here's one. Okay, you said it's just wrong. It's just wrong. That's what I'm explaining. When the district court said it only has—appears to have a single flange, you're saying that's wrong. That's wrong. You can look at the devices yourself. They look just like this, the original design. There's structure that sticks up from the housing that is the flange, and there's structure that projects it inwardly. He doesn't like the way we're labeling it, but we're labeling it correctly in accordance with the patent. This structure that extends inwardly is the trunnion, and that's what's— So you're saying this structure identified as T2 is not part of the flange. That's part of the trunnion. Well, it's all part of the housing. The flange is the part of the housing that sticks up above the display. The trunnion is the inwardly formed structure that comes in. It can be formed as separate components. It can be formed as integral components. The same thing if you look at page 45. We were just looking at the original design. Here is the modified design, and what we've shown is T1 and T2. The flange you can see is F1 and F2 extends up above the main body of the calculated display, and the trunnion is that big, long, cylindrical-like structure that extends inwardly that has this long recess inside of it. And you can also see from the patent application that they submitted on this, figure 5 on page 47 of the brief, it's a big hole. It's a female—this embodiment has two female trunnions. The same thing on page 47 with their Calc 050 model. You have the main body of the housing. It's all formed in one piece out of plastic. The flange is the portion that sticks up. The trunnion is the part of the flange that forms a pivot point. It is not necessary. None of their devices have a pure recess in the flange like some of the prior art, like Murakami and the like. I would also like to note that this is a first-action allowance here. The doctrine of equivalence is wide open on this patent. Has the question been answered? Time has expired. The appeal is taken under advisement based on both the brief and the oral argument, and, of course, the record of the cross-appeal is also before the court taken under submission based on the briefs only. We thank both counsel.